THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* AMADOR SANTOS, Defendant and Appellant.

No. 12655. Argued November 10, 1948.—Decided December 21, 1948.

*Antonio J. Matta* for appellant. *Luis Negrón Fernández, Attorney General,* and *J. Rivera Barreras, Prosecuting Attorney,* for appellee.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

The prosecuting attorney of the District Court of Humacao filed an information against Amador Santos and Justo Alvira, for the crime of extortion, alleging that on August 14, 1946, at Fajardo, "the former as member of the Local Board of Supplies of Fajardo and the latter as an alleged client of Sabat Hernández, a merchant, unlawfully, wilfully and maliciously, obtained property consisting of money from the aforesaid Sabat Hernández, with his consent, induced by a wrongful use of fear, under threats to file a complaint against said merchant for having committed the crime of

selling to defendant Justo Alvira staple commodities at a price in excess of that stipulated or permitted by law."

The defendants moved for separate trials. Amador Santos was tried by the court and was found guilty of the crime charged.[1] Before judgment was pronounced the defendant filed a motion for a new trial on the ground that the court had committed certain errors of law during the trial and because of newly discovered evidence. The motion was denied and the court sentenced the defendant to serve from one to five years' imprisonment in the penitentiary at hard labor. From the judgment as well as from the decision denying the motion for a new trial the defendant has appealed to this Court and assigns seven errors.

■■ Under the first assignment he contends that the court erred in holding that §§ 456 and 459 of the Penal Code charge separate offenses and, therefore, that the court acted without jurisdiction in proceeding with the trial on the ground that the offense charged was a felony and imposing on him a sentence of imprisonment in the penitentiary. Appellant maintains that when the prosecuting attorney accused him of extortion he referred to him in the information "as member of the Local Board of Supplies of Fajardo" and that this charge makes the offense a misdemeanor since § 459, 1937 ed., provides that "Every person who commits any extortion under color of official right, in cases for which a different punishment is not prescribed in this Code, is guilty of a misdemeanor."

Section 456 of the Penal Code, 1937 ed., defines the crime of extortion thus: "Extortion is the obtaining of property from another, with his consent, induced by a wrongful use of force or fear, or under color of official right."

The crime of extortion, therefore, has two modalities, to wit, obtaining of property from another person, (1) with his consent induced by a wrongful use of force or fear, (2)

---

[1] Justo Alvira was tried by a jury and was found guilty. The judgment was affirmed by this Court *ante*, p. 221.

or under color of official right. The prosecuting attorney in this case accused under the first modality of § 456, charging defendant in the information with having obtained money by the wrongful use of fear, under threats to file a complaint against Sabat Hernández, a merchant, for having sold certain articles at a price not permitted by law. The mere fact of having referred to the defendant in the information "as member of the Local Board of Supplies", does not mean that the defendant obtained the money under color of official right, and that, therefore the offense charged is a misdemeanor. The specific charge, the gist of the information, is that the money was obtained by the use of fear under threats to file a complaint against the merchant. The first error was not committed.

■■ Under the second assignment it is alleged that the court erred in denying the motion for a bill of particulars. Defendant's object in requiring said bill of particulars was to learn whether he was being accused as a public officer; to be informed of the amount of money obtained by the defendant from Sabat Hernández, the injured merchant; to learn the statements and actions of the defendant that induced the merchant to deliver the money and who were present when the money was delivered to him.

As to whether or not he was being accused as a public officer, we have already seen, in disposing of the first assignment, that he was not being accused as a public officer (and it was so admitted by the prosecuting attorney when arguing the motion for a bill of particulars, which was tantamount to informing the defendant of that fact), inasmuch as the information clearly accused him of having obtained the money from the merchant by the use of fear, under threats to file a complaint against said merchant.

We have decided that the granting of a bill of particulars lies within the discretion of the court where the trial is held and that its decision denying the same shall not be reversed unless the facts of the case clearly show that the denial of

the motion precluded the defendant from preparing his defense. *People* v. *Ramírez*, 50 P.R.R. 224. However, after a careful examination of the transcript of the evidence, we find no ground to conclude that due to the lack of a bill of particulars the defendant was unable to prepare his defense inasmuch as he denied having taken part in the meeting where the $200 were demanded and delivered. The substantial rights of the defendant, therefore, were not impaired by the denial of said bill. *People* v. *Berenguer*, 59 P.R.R. 79; *People* v. *Berdecía*, 59 P.R.R. 317.

Under the third assignment it is alleged that the lower court erred in admitting in evidence the testimony of Ángel Correa as to the transaction had between appellant and Sabat Hernández on August 12, 1946, since in the information it is alleged that the crime was committed on August 14, 1946. By the testimony of Ángel Correa the prosecuting attorney attempted to prove that appellant asked Sabat Hernández for two dollars; that the latter did not have the money and asked Ángel Correa to lend them to him; that Correa loaned them to him and saw when Hernández delivered them to appellant. According to the evidence, appellant asked Hernández for these two dollars after appellant told him that Justo Alvira, the other defendant, had informed him that Mr. Hernández had sold Alvira some merchandise at an excessive price. The appellant then advised him to fix the matter up because it was a criminal question.

Appellant maintains that this testimony was immaterial and irrelevant. Accepting that it was, we do not see how it prejudiced the appellant. Sabat Hernández had already testified that he had borrowed the two dollars from Ángel Correa in order to give them to appellant. Correa's testimony tends to corroborate this. The fact that this transaction took place on August 12 and not on August 14, does not render it inadmissible. According to the evidence presented, August 12, that is, the day when the two dollars were delivered to the defendant, was the day the transaction com-

menced which culminated in the delivery of the $200 by Sabat Hernández to codefendant Justo Alvira, two days later.

■■ The fourth error assigned is more serious. It consists in that the lower court refused to receive evidence as to previous contradictory statements made by Sabat Hernández and which were offered by the defendant in order to impeach the credibility of the prosecuting attorney's star witness. As we have seen, Sabat Hernández is the merchant from whom, according to the information, the appellant and Justo Alvira demanded the delivery of $200 under threats to file a complaint against him. On direct examination he testified to that effect. On cross examination appellant's attorney attempted, in different ways, to lay the proper foundation to impeach the credibility of his testimony by questioning him as to former statements of his, which were contradictory and favorable to the defendant and then, as part of his defense, he tried to introduce evidence with regard to said statements. On both occasions the district attorney objected to the examination on the ground that in order to comply with § 159 of the Law of Evidence [2] and the authorities "this testimony (former) must be verified in writing and presented to the witness with the circumstances of time, persons present, and it must be shown to the witness or read to him" (page 54 Tr. of Ev.), since "Section 159 does not contemplate the impeachment of the credibility of a witness except when the statements are sworn in writing." (page 55 Tr. of Ev.) The lower court asked the district attorney: "So that the credibility of a witness may be impeached only by written statements?", to which the

---

[2] This Section provides: "A witness may also be impeached by evidence that he has made, at other times, statements inconsistent with present testimony; but before this can be done, the statements must be related to him, with the circumstances of times, places, and persons present, and he must be asked whether he made such statements, and if so, allowed to explain them. If the statements be in writing, they must be shown to the witness before any question is put to him concerning them."

district attorney answered: "They must be in writing, that is the theory of the district attorney; written statements which must be read to the witness." (page 55 Tr. of Ev.) The question which gave rise to this incident was the following: "Tell me witness, is it not true that on August 16, 1946 you appeared together with Amparo Rodríguez before the Municipal Judge Jaime Llavina Aponte, to be examined by the Judge as to the facts and that you stated: 'I appreciate what Amador has done for me; all I want is that Justo return the money to me. . .' Did you or did you not say those words?"

The court held that the question was irrelevant and immaterial because it related to facts which took place on August 16. It ruled: "In order to show that the witness has made contradictory statements it must be done according to the law. (*sic*) Objection sustained."

The defendant then stated in the record the following: "We respectfully move for a reconsideration, on the ground, your Honor, that all these questions which we have asked the witness are directly related with these facts. These facts allegedly took place on the 14th, and on the 16th the witness was called to testify before the Secretary of the Board, whose testimony we shall duly present before this court; and on the same 16th, he also testified before the Municipal Judge on the same facts. We are laying the foundation to bring the testimony of the Judge at the proper time. We are only asking whether or not the conversation took place between him and the judge."

Upon presenting his evidence the defendant called to the witness stand Jaime Llavina Aponte, the Municipal Judge of Fajardo, who began to testify as to the conversation had with Sabat Hernández concerning the matter of the alleged extortion from him. However, the district attorney objected and the court did not allow him to continue his testimony. The witness stated that he had not taken written statements. The defendant asked another question, which was objected

to by the district attorney, and not admitted by the court and the following took place:

"Defense: We are going to move for a reconsideration because in a case of this nature to leave the defense without any weapon. . . This morning we offered questions to prove contradictory statements. With the testimony of Jaime Llavina Aponte we intended to prove that in his official investigation the witness Sabat Hernández made statements to him entirely different from those he made in the witness stand and we feel that having laid the foundation this witness should be allowed to testify in that respect, in order that the court may be in a position to weigh the testimony of Sabat Hernández. If the court insists in that the statement or testimony of Sabat Hernández on the day following the events is not admissible then we find ourselves unprotected.

District Attorney: And the law of evidence? . . .

Defense: The law of evidence provides that contradictory statements of a witness are admissible after proper foundation is laid.

Judge: How is the proper foundation laid? . . .

Defense: This morning I asked witness Sabat Hernández whether or not he had made certain statements before a certain person at a certain time. . .

Judge: Whether he had attended an investigation carried out before the Municipal Judge. . .

Defense: And he answered affirmatively. I also asked him whether he had made these statements and then the district attorney objected.

Judge: The court sustains its decision."

An examination of § 159 of the Law of Evidence, *supra*, and of § 245 of the Code of Criminal Procedure, whose provisions are similar, is sufficient to show that the theory of the district attorney in the sense that the only manner of impeaching the credibility of a witness is by written statements formerly made, is untenable. We have never made such ruling. According to the aforesaid statutory provisions and our cases construing them, the credibility of a witness may be impeached by oral as well as written statements made by him prior to the trial. *People* v. *Lafontaine*, 43 P.R.R.

21, and cases cited therein; *People* v. *Méndez*, 54 P.R.R. 22; *People* v. *Cruz*, 62 P.R.R. 801; *People* v. *Tirado*, *ante*, p. 361.   The error committed by the court is manifest and it prejudiced the rights of the defendant.   He tried, uselessly ¡and in different ways, to lay the foundation to impeach the testimony of Sabat Hernández, the star witness of the prosecuting attorney, and he fully informed the court the aim he pursued and the nature of the evidence which he intended to present.   The case at bar, therefore, is not governed by the doctrine that the defendant can not establish his own defense by contradicting one of his own witnesses. *People* v. *Marchand*, 53 P.R.R. 640.   Here, as we have said, he tried to contradict the star witness of the prosecuting attorney in order to overcome the effect of his testimony at the trial.   To that end the evidence was clearly admissible. Appellant laid the basis and offered material evidence. What else could he do in order to comply with § 159, *supra?*

Since this error together with the seventh assignment which refers to the denial of a new trial, call for the reversal of the judgment and the granting of a new trial, we shall not pass upon the other errors assigned inasmuch as they refer to the weighing of the evidence.

The decision denying a new trial and the judgment of the lower court should be reversed and the case remanded for a new trial.

Mr. Justice Negrón Fernández did not participate herein.